UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JANAMJOT SINGH SODHI,<br><br>Defendant. | No. 1:11-cr-00332-NONE<br><br>ORDER GRANTING MOVANT'S REQUEST FOR AN EVIDENTIARY HEARING<br><br>(Doc. No. 47) |

**INTRODUCTION**

Janamjot Singh Sodhi ("movant"), a former federal prisoner proceeding *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255"). (Doc. No. 47.) The government filed its opposition to that motion, and movant filed his reply thereto. (Doc. Nos. 52, 62.) In his reply, movant requests an evidentiary hearing with respect to his allegations that he received ineffective assistance of counsel. (Doc. No. 62 at 24.) For the reasons discussed below, movant's request for an evidentiary hearing will be granted.

**BACKGROUND**

Movant is a native of India who first came to the United States in 1989 and was admitted as a lawful permanent resident of the United States in February 2010. (Doc. No. 47 at 2.) In

1

1  January 2013, movant entered a plea of guilty to four counts of mail fraud in violation of 18

2  U.S.C. § 1341 and one count of wire fraud in violation of 18 U.S.C. § 1343, after which he was

3  sentenced to 57 months in prison.  (Doc. Nos. 26, 27, 43.)

4       In his plea agreement, movant waived his right to appeal from or collaterally attack his

5  guilty plea, conviction, and sentence.  (Doc. No. 26 at 4.)  At the plea hearing, movant

6  acknowledged that he had signed the plea agreement, that the factual bases therein were true, that

7  his attorney had answered all of his questions, and that movant was waiving his right to appeal.

8  (Doc. No. 52-1, Plea Hearing Transcript, at 3:13–22; 4:8–12; 5:2–4.)  Movant also confirmed that

9  his plea "may subject him to automatic deportation and removal from the United States" and that

10  he "want[ed] to plead guilty regardless of any immigration consequences that may result from

11  []his plea, even if such consequence includes his automatic deportation and removal from the

12  United States."  (Doc. No. 52-1 at 6:25–7:21.)

13       The U.S. Bureau of Prisons website indicates that movant completed his federal criminal

14  sentence on March 10, 2017.  When movant was released from federal prison, he was detained by

15  Immigration and Customs Enforcement ("ICE") officials.  (Doc. No. 62 at 11.)  Movant

16  subsequently submitted a motion in this case seeking relief under 28 U.S.C. § 2255 on May 28,

17  2019 (Doc. No. 45), wherein he alleged that his pleas of guilty were not "knowing and voluntary"

18  because he received ineffective assistance of counsel ("IAC") during the plea process.  (Doc. No.

19  45 at 7–8.)  Specifically, movant argues that his attorney in the trial court, Daniel Bacon, did not

20  advise him of the collateral immigration consequences—such as deportation—that accompanied

21  movant's guilty plea.  (Doc. No. 45 at 8.)

22       The government filed its opposition to the § 2255 motion on September 16, 2019 (Doc.

23  No. 52) and later filed a declaration from movant's trial court attorney on September 23, 2019.

24  (Doc. No. 56.)  Movant filed his reply after the granting of an extension of time to do so on

25  January 3, 2020.  (Doc. No. 62.)  In the time between movant submitting his § 2255 petition and

26  submitting his reply, movant was released from ICE custody.  (Doc. No. 62 at 1–2.)

27  /////

28  /////

**LEGAL STANDARD**

Because movant is no longer in federal custody, his petition will be construed by the court as a petition for writ of error coram nobis. The writ of error coram nobis is an extraordinary remedy that allows a movant to attack an unconstitutional or unlawful conviction after the movant has served his sentence and is no longer in custody. *United States v. Morgan*, 346 U.S. 502, 511 (1954); *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). "The writ provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" *See United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989).

As a *pro se* litigant, the movant's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). To qualify for coram nobis relief, a movant must establish that: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case and controversy requirement of Article III; and (4) the error suffered is of the most fundamental character. *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005), *abrogated in part on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010).

In the alternative to a ruling on the merits, movant requests an evidentiary hearing; he is entitled to such a hearing on these claims unless the "motions and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981).

**ANALYSIS**

The government concedes that movant has satisfied the first element required for coram nobis relief: movant is not a prisoner in custody, so a more usual remedy is not available to him. (Doc. No. 52 at 4 n.1.) Further, the possibility of deportation satisfies the case and controversy requirement of Article III, so the third element is met. *See Kwan*, 407 F.3d at 1014 (finding that the possibility of deportation is an 'adverse consequence' of conviction sufficient to satisfy Article III's case or controversy requirement.) As to the second and fourth elements, the

government argues that movant should have attacked his criminal conviction earlier and that he has not suffered an "error of the most fundamental character."

**A.     Timeliness**

"Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir. 1994); *see also United States v. Morgan*, 346 U.S. 502, 507 (1954) (explaining that coram nobis petitions are allowed "without limitation of time"). In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier. *See, e.g., Morgan,* 346 U.S. at 512; *Estate of McKinney By and Through McKinney v. United States,* 71 F.3d 449, 781 (9th Cir. 1995); *Maghe v. United States,* 710 F.2d 503, 503–04 (9th Cir. 1983).

The Ninth Circuit has yet to define what constitutes a "valid or sound" reason, *United States v. Kroytor*, 977 F.3d 957 (9th Cir. 2020), but it has noted that "courts have denied relief for unjustified delay where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ." *Kwan*, 407 F.3d at 1013.  In *Kwan*, as here, the movant sought coram nobis relief from his plea, pursuant to plea agreement, to the commission of an aggravated felony on the grounds that his attorney did not inform him that he would almost certainly be deported as a consequence of the plea. *Id*. at 1009. Kwan had not filed a § 2255 petition before pursuing coram nobis relief; instead, he retained immigration counsel and followed that counsel's advice in challenging the characterization of his conviction as an "aggravated felony." *Id*. at 1013.  The Ninth Circuit found that the delay caused by "Kwan's decision to focus on challenging his deportation on the basis of his conviction" was reasonable, particularly given the fact that his "defense counsel had advised [Kwan] that there was little chance his conviction would cause him to be deported." *Id*. at 1014.  The Ninth Circuit emphasized that the law does not require movants to challenge their convictions at the earliest opportunity, it only requires movants to have sound reasons for not doing so. *Id*.

/////

The factual scenario here mirrors *Kwan* sufficiently to compel the same conclusion. Movant alleges that he was unaware of the immigration consequences of his plea until he completed serving his sentence on March 10, 2017. (Doc. No. 62 at 11.) Movant alleges that he first became aware that his counsel "misled" him when ICE initiated removal proceedings against him and took him into their custody. While detained by ICE, movant retained an immigration attorney who advised him not to file a § 2255 motion—instead, movant was advised to challenge the removal order and seek a bond hearing as a political asylee. (*Id*. at 11–12.) Movant's delay in filing the petition pending before this court was reasonable. Because the government has not suggested that this delay has caused it prejudice, and because movant does not appear to be abusing the writ, movant is not ineligible for relief based solely on the fact that he could have, but did not, collaterally attack his conviction earlier.

**B.     Ineffective Assistance of Counsel**

Movant may satisfy the "fundamental error" requirement for coram nobis relief by establishing that he received ineffective assistance of counsel ("IAC"). *Kwan*, 407 F.3d at 1014. Though movant's guilty plea contained a waiver of his right to collaterally attack his conviction and sentence, "[c]laims that . . . ineffective assistance of counsel rendered the plea or waiver involuntary [] may not be waived." *Davies v. Benov*, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017). The court will therefore analyze whether movant has sufficiently pled his IAC claim.

To prevail on his claim of ineffective assistance of counsel, Kwan must prove 1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that the deficiency in his counsel's performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 688, 692 (1984).

       1.     Deficient Performance

Counsel's failure to inform their client that a plea agreement may carry a risk of deportation constitutes deficient performance. *Padilla*, 559 U.S. 356 at 374. In *Padilla*, the petitioner alleged that his counsel failed to advise him of the immigration consequences of his guilty plea and further assured him that he would not be at risk of deportation due to the length of his lawful permanent residency. *Id*. at 359. The Supreme Court held that these allegations of

5

constitutionally deficient performance were sufficient. *Id*. at 374.

Here, movant alleges that his counsel failed to advise him that his plea agreement would carry immigration consequences not outlined in the four corners of that document. (Doc. No. 47 at 2, 18–19.) Further, movant alleges that his counsel made assurances that movant need not be concerned about deportation because he was a legal permanent resident who had been granted political asylum. (*Id*. at 18–19.) The government refutes movant's claims with a declaration from movant's trial court counsel, in which counsel declares that he informed movant that his deportation would be "mandatory" upon his entry of guilty pleas to the charges in this case that constituted aggravated felonies. (Doc. No. 56 at ¶ 5.)

The government also argues that it sufficiently informed movant of the possibility of immigration consequences during the plea colloquy. Specifically, the government points out that in the following exchange, movant was specifically warned:

> GOV'T:  Your honor, if I may, there was one other thing that we discussed with defense counsel.  And I just wanted to put on the record.  It's that—with respect to the immigration consequences.  If I may read that provision, which is not written in the plea agreement, but—
>
> COURT:  Okay.
>
> GOV'T:  Thank you, Your Honor.  The defendant recognizes that pleading guilty *may* have consequences with respect to his immigration status if he is not a citizen of the United States.  The defendant's plea to the violation herein *may* subject him to automatic deportation and removal from the United States . . . [the defendant] wants to plead guilty regardless of any immigration consequences that may result from this plea, even if such consequence includes his automatic deportation and removal from the United States after completing any sentence of incarceration due to his plea.
>
> COURT:  Did you understand that?
>
> MOVANT:  Yes, I did.
>
> COURT:  And you agree to it?
>
> MOVANT:  Yes.

(Doc. No. 52-1 at 3:13–22, 4:8–12, 5:2–4) (emphasis added).

/////

However, the government's warning to movant only stated that deportation was a *possible* consequence of his guilty plea. *See United States v. Rodriguez-Vega*, 797 F.3d at 787 (9th Cir. 2015) (finding in the habeas context that it is constitutionally deficient to warn a defendant that they *may* be deported when the reality is near certain: "it is important to note that "warning of the possibility of a dire consequence that something 'may' happen is no substitute for warning of its virtual certainty."). In *Rodriquez-Vega*, the Ninth Circuit categorically rejected language almost identical to the statements made here by the government at movant Sodhi's change of plea hearing because it did not sufficiently inform the defendant that her deportation was all but guaranteed. *Id*. at 786–87. Further, the government's statements at the change of plea hearing are "simply irrelevant to the question whether [defense] *counsel's* performance fell below and objective standard of reasonableness." *Id*. at 787.

Movant asserts, in his pleadings and via a sworn affidavit, that he was never informed of any *mandatory* immigration consequence of his guilty plea and that if he had been informed of these consequences, he would not have accepted the plea deal. (Doc. Nos. 45 at 9; 47 at 14, 18; 62 at 3–5.)

        2.     <u>Prejudice</u>

In the *Strickland* prejudice analysis, the determinative question is whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Glover v. United States*, 531 U.S. 198, 202–03 (2001). A "reasonable probability" is a standard of proof "sufficient to undermine confidence in the outcome" and is "somewhat lower" than a preponderance of the evidence; defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Strickland*, 466 U.S. at 693–4. Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that "but for counsel's errors, [defendant] would either have gone to trial or received a better plea bargain." *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004); *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017).

To determine what movant would have done but for counsel's errors, courts should "look

7

to contemporaneous evidence to substantiate a defendant's expressed preferences," such as repeatedly inquiring about immigration consequences during the plea process. *Lee*, 137 S. Ct. at 1967; *see also Rodriguez-Vega*, 797 F.3d at 789 (the court may find "prejudice where a non-citizen demonstrates clearly that []he placed a 'particular emphasis' on the immigration consequence of a plea in deciding whether or not to accept it.").

Here, movant asserts that if he had known he would be subject to mandatory deportation as a result of his plea, he would have rejected the plea and either gone to trial or explored the option of renegotiating his plea agreement. (Doc. Nos. 47 at 14; 62 at 19, 23); *see Kwan*, 407 F.3d at 1017. Movant supports this assertion by noting that he asked his attorney several times whether he should be concerned about immigration consequences both pre- and post-plea. (Doc. No. 47 at 18–19). And though movant's attorney disagrees that movant was never informed about the near-certain deportation that would follow the plea, he also recounts the emphasis that movant put on immigration consequences when considering the plea. (Doc. No. 56 at ¶ 6.) Movant has also taken notable steps to avoid deportation since he was detained by ICE and placed in removal proceedings, which demonstrates a reasonable probability that movant might well have moved to withdraw his plea but for counsel's alleged deficient performance.

**C.     Evidentiary Hearing**

Assuming the truth of movant's allegations when viewed against the current record, movant states a claim upon which relief could be granted. Accordingly, an evidentiary hearing is required to resolve the factual disputes regarding movant's ineffective assistance of counsel claim in order for the court to resolve that claim on the merits. *See United States v. Leonti*, 326 F.3d 1111, 1116 and 1122 (9th Cir. 2003.) Though movant does not necessarily have a right to counsel in this context, the Criminal Justice Act authorizes the appointment of counsel at any stage of a proceeding for financially eligible persons if "the interests of justice so require." 18 U.S.C.§ 3006A(2)(B). The court will therefore refer this matter to the Office of the Federal Defender for appointment of counsel in connection with the evidentiary hearing pursuant to Rule 8 and consistent with the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A.

/////

**CONCLUSION**

For the reasons stated above, movant's request for an evidentiary hearing is GRANTED. Accordingly, for the reasons set forth above, the court ORDERS that:

1. Movant's case is referred to the Federal Defender's Office for appointment of counsel for purposes of an evidentiary hearing;

2. The Clerk of Court is DIRECTED to add the Federal Defender's Office Panel Administrator, Connie Garcia (Connie_Garcia@fd.org), to the service list prior to docketing of this order;

3. A status conference for purposes of scheduling an evidentiary hearing in this case is now set for February 11, 2022 at 9:30 a.m.  As the court anticipates reassignment of this action in the coming days to U.S. District Judge Jennifer L. Thurston, the matter will be placed on her calendar and the parties shall contact her courtroom deputy, Irma Munoz at imunoz@caed.uscourts.gov for Zoom access information.

IT IS SO ORDERED.

Dated:   **January 6, 2022**

_____
UNITED STATES DISTRICT JUDGE