UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JANAMJOT SINGH SODHI,<br><br>  Defendant. | Case No. 1:11-cr-00332-JLT<br><br>ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE<br><br>(Docs. 45, 47) |

Janamjot "Jimmy" Singh Sodhi seeks to have his guilty plea set aside based upon the immigration consequences he has suffered as a result. After conducting an evidentiary hearing, the Court **DENIES** the motion.

I.  **Background**

In early 2005, Jimmy Sodhi ran a financial advisory firm despite that he had not applied for a certificate to operate as a financial advisor from the California Department of Corporations as required by California law. (Doc. 26 at 12) In this role, Sodhi,

> solicited money from individuals, hereinafter called "investors", using various false and fraudulent pretenses, promises, statements and material omissions, for the purpose of enticing his investors to invest in alleged investment opportunities being sold by him. The defendant advertised that he was capable of selling investment opportunities such as stocks, money market funds and other investments in the securities markets, including but not limited to the stock market. He also advertised "get rich quick" investment opportunities whereby he could provide investors with an investment opportunity through which investors could purportedly receive higher rates of return on their investment in a relatively short

1

period of time. On at least one occasion, the defendant instructed an investor to pay his investment money to a third party. Unbeknownst to the investor, the third party was a girlfriend of the defendant's brother. The defendant directed that the payment be made to this individual in order to conceal and disguise the nature, intent of the defendant's actions, and the real purpose to which those monies were intended.

In January 2006, the New York Stock Exchange determined Sodhi had violated the securities rules and stole client funds. (Doc. 26 at 11-12) Consequently, the NYSE permanently barred him from membership in the exchange in every capacity. Id. In January 2009, the California Department of Corporations ordered him to stop acting as an investment advisor. Id. at 12. Despite this, Sodhi did not tell his investors that he had been debarred by the NYSE or that he had been ordered to stop acting as an investment advisor and continued to seek out people to give him money through his fraudulent schemes until about 2011. Id at 13; Doc. 10 at 3.

Sodhi used the money to support himself and his brother, Bobby Sodhi. (Doc. 26 at 13) To encourage his investors to keep giving him money, Sodhi created falsified financial statements showing investments that he claimed he had made on their behalf. Id. When investors wanted their money returned, Sodhi would lie to them and stall and then, when pressed, he would pay them back using money provided by other investors. Id. In total, Sodhi duped investors out of more than $3 million and returned less than $700,000. Id. When charged by indictment, the government alleged ten separate counts of mail and wire fraud. (Doc. 10) As to each count, Sodhi faced up to 20 years in prison, a $250,000 fine a $100 special assessment and up to three years of supervised release in addition to criminal forfeiture. (Doc. 10-1 at 3) Each count qualified as an aggravated felony. 8 USC 1101(a)(43)(M)(i).

The plea agreement allowed Sodhi to plead guilty to five felony counts of mail fraud and one felony count of wire fraud. (Doc. 26 at 4) He agreed that the adjusted offense level was 27, and that he would make restitution for the full amount of the losses incurred between 2005 and 2011. Id. at 5, 6. The government agreed it would seek a sentence within the guideline range, it would ask the court to impose the sentences to run concurrently and it would seek to dismiss the remaining counts. Id. at 10-11

Though the plea agreement did not discuss the immigration consequences for his plea, at

his change-of-plea hearing, he admitted he understood that the plea would subject him to automatic deportation and removal from the country. (Doc. 52-1 at 5, 7) Despite this, Sodhi affirmed that he wished to enter his guilty plea. Id. Ultimately, the Court sentenced Sodhi to 57 months in prison as to each count and ordered the sentences to run concurrently. (Doc. 39) After he served his sentence, he was transferred to an immigration detention facility, and he spent 45 months in immigration custody. (Doc. 98 at 69-70.

## A.     Mr. Bacon was obligated to inform Mr. Sodhi that he would be deported

The charges to which Mr. Sodhi plead guilty were aggravated felonies because the loss exceeded $10,000. (Doc. 10 at 5-8; 8 U.S.C. § 1101(a)(43)(M)(i).) When a client is charged with an aggravated felony, the standard of care requires counsel to advise the client that upon conviction, deportation and removal from the country is "virtually certain." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010); *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015).

## B.     Mr. Sodhi was advised of the immigration consequences of his plea

At the evidentiary hearing, Mr. Sodhi admitted that at the time the court took his plea, he understood that he was facing mandatory deportation if he was convicted of the crime. (Doc. 98 at 85, 90) He admitted also that he wanted to plead guilty to the offenses even if the consequence was his automatic deportation and removal from the United States. Id. at 88, 90.

Nevertheless, Mr. Sodhi testified at the evidentiary hearing that he did not believe that deportation would be a consequence of his plea, because the plea agreement failed to include an advisal in this regard. (Doc. 98 at 89) Sodhi testified that had he realized that deportation was a consequence he would suffer, he would have sought a plea agreement which did not have these immigration consequences. The Court finds this testimony to be wholly incredible.

First, Sodhi's attorney, Daniel Bacon, testified that many times, he discussed the immigration consequences of the guilty plea/conviction with Mr. Sodhi. (Doc. 98 at 20, 21, 22, 30, 53-54) Because Mr. Bacon found it unusual that the immigration consequences were not spelled out in the plea agreement, he told Mr. Sodhi that regardless of whether the language was in the agreement, the law controlled, and that deportation would necessarily follow the plea and conviction. Id. at 29-30, 53-54. Mr. Bacon iterated that Mr. Sodhi understood because, "If I didn't

feel he understood, I wouldn't have entered the plea." Id. at 30.[1]

Mr. Bacon explained to Sodhi that the crimes were aggravated felonies, which required automatic deportation. (Doc. 98 at 21, 22, 23, 53-55) He advised Mr. Sodhi that because the crimes were aggravated felonies, "political asylum doesn't work and [he] recommended that [Sodhi] talk to an immigration lawyer just to get an expert position on it." Id. Even still, in Mr. Bacon's opinion, the evidence was overwhelming, and Sodhi would likely be convicted at trial. Id. at 20, 51-53. He told Sodhi, "if you lose, you get deported anyway and [you'll get] more time [in prison], or make this deal. It's up to you; what do you want to do?" Id. at 21.

Second, as noted above, Mr. Sodhi testified that even though he told the Court that he understood that conviction of the crimes would mean he would be deported that, in fact, he did not understand. Mr. Sodhi claims that because there was no information in the plea agreement about immigration consequences, he did not believe the admonitions given applied to him. Even ignoring the repeated admonitions Mr. Bacon gave him about the near certainty that Mr. Sodhi would be deported, Mr. Sodhi knew, at the time of his change of plea hearing, that there *would* be immigration consequences.

At the hearing, the USA attorney told the Court that the plea agreement failed to include the language about immigration consequences and read aloud the information that should have been included in the plea agreement. (Doc. 43 at 7) The advisal informed Mr. Sodhi that if he was not a United States citizen—and he knew he was not—Mr. Sodhi's "plea to the violation herein may subject him to automatic deportation and removal from the United States." Id. Mr. Sodhi affirmed that, "he's been advised of the immigration consequences of pleading guilty and wants to plead guilty regardless of any immigration consequences that may result from this plea, even if such consequence includes his automatic deportation and removal from the United States after completing any sentence of incarceration due to his plea." Id. Mr. Sodhi's implicit argument that

---

[1] The file notes, which would have corroborated Mr. Bacon's testimony, have gone missing. (Doc. 98 at 33-34) Also missing is the retainer agreement. Id. Though he did not check the file before he turned the file over to Bobby Sodhi, who picked up the file for his brother, Mr. Bacon testified that these documents were in the file. Id. Bobby Sodhi was a beneficiary of Mr. Sodhi's fraud, and the scheme involved Bobby Sodhi's girlfriend, who accepted "investor" funds for Jimmy Sodhi to assist him in furthering the fraud. (Doc. 26 at 12) After evaluating the evidence and considering the testimony, the Court finds that Mr. Bacon's notes were in the file at the time Bobby Sodhi retrieved it.

he was entitled to ignore what he was being told because it was not written in the plea agreement, verges on frivolous because the AUSA stated that the information *should have been included in the plea agreement*. Despite this, Mr. Sodhi continued with the change of plea without seeking any type of clarification. Thus, the Court finds that Mr. Sodhi *did* understand the immigration implications of his plea. Moreover, the Court has evaluated Mr. Sodhi's demeanor while testifying about this topic, and finds he was unbelievable.

Third, Mr. Sodhi's current claim that he would have sought an alternate plea agreement had he appreciated the immigration consequences of his convictions, fails to convince the Court. The fact that he *wished* that he was charged with a crime without immigration consequences is one that is shared by many criminal defendants, but this does not create a genuine dispute in the evidence, which includes, among other evidence, that he admitted to the court that *he had been advised* of the immigration consequences of his plea.

Finally, the Court cannot ignore that for years, Mr. Sodhi lied, cheated and stole. He went to great lengths to make it appear that his actions were legitimate to further his ongoing criminal charade. Based upon its evaluation of the evidence and the testimony given, the Court has no doubt that Mr. Sodhi's current claim that he was unaware that he would be deported consequent to his plea, sadly, is just more of the same.

For these reasons, the Court finds that Mr. Sodhi had been properly advised of the immigration consequences before he entered his guilty plea and despite this, chose to enter his plea freely and voluntarily. Thus, his motion to vacate, set aside of correct his sentence under 28 U.S.C. § 2255 is **DENIED**.

IT IS SO ORDERED.

Dated: __**October 5, 2022**__      _Jennifer L. Thurston_
                                      UNITED STATES DISTRICT JUDGE